IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01567-CNS-MEH

DAVID R. GODEL and
WILLIAM J. LOMAX,

      Plaintiffs,

v.

MOSES ANDRE STANCIL *et al.*,

      Defendants.

---

**DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6)**

---

Defendants Stancil, Bailey, Folz and Kline (collectively, "Defendants") through the Colorado Attorney General, respectfully submit the following Partial Motion to Dismiss Plaintiffs' Second Amended Complaint ("SAC") [ECF No. 42] pursuant to Fed. R. Civ. P. 12(b)(6). In support thereof, Defendants state as follows:

### CERTIFICATE OF CONFERRAL

Because Plaintiffs David Godel and William Lomax are *pro se* prisoners, Defendants are not required to confer with them as to this motion under D.C.COLO.LCivR 7.1(b)(1).

### STATEMENT OF THE CASE

Plaintiffs are *pro se* litigants presently incarcerated at Fremont Correctional Facility ("FCF") in the custody of the Colorado Department of Corrections ("CDOC"). They bring this action pursuant to 42 U.S.C. § 1983. Plaintiffs allege that Defendants, in their official capacities,

1

have violated 1) their procedural due process rights, 2) their substantive due process rights, 3) their right to equal protection, and 4) their Eighth Amendment rights.

With regard to their substantive due process claim, Plaintiffs allege that the Defendants violated their substantive due process rights by implementing a "policy and practice of arbitrarily depriving offenders of statutorily mandated treatment[,] despite actual knowledge that such deprivation would make [such offenders] ineligible for parole," thereby unnecessarily extending their incarceration. *Id*., ¶ 47. As to their equal protection claim, Plaintiffs assert that the CDOC's is unconstitutional administrating the Sex Offender Treatment and Monitoring Program ("SOTMP") and its associated waitlist, known as the global referral list ("GRL"). Plaintiffs allege that because other "similarly situated" offenders have been granted entry into the SOTMP while they remain on the waitlist, Defendants have violated of their equal protection rights. Finally, Plaintiffs assert that their inability to access sex offender treatment via the CDOC's SOTMP constitutes deliberate indifference to their serious mental health needs and is therefore violative of the Eighth Amendment's prohibition on cruel and unusual punishment. Plaintiffs seek injunctive relief, requesting an order that Defendants immediately provide them with an opportunity to participate in the SOTMP, as well as nominal damages.

Defendants do not seek dismissal of the procedural due process claim at this time. However, Defendants move for partial dismissal, and request dismissal of Plaintiffs' substantive due process claim because Plaintiffs' allegations do not demonstrate that Defendants' alleged actions "shock the conscious" as necessary to state a viable substantive due process claim. Defendants also seek dismissal of Plaintiffs' equal protection claim, because their allegations do

2

not demonstrate that Plaintiffs have been treated differently than similarly situated inmates. Finally, Defendants seek dismissal of Plaintiffs' deliberate indifference claim because they have not plausibly alleged that they suffer from a serious mental disorder.[1]

With regard to their factual allegations, Plaintiffs allege that in 2015 both Godel and Lomax were sentenced pursuant to the Colorado Sex Offender Lifetime Supervision Act of 1998 ("SOLSA"), and that both are currently serving indeterminate sentences because of their respective convictions for sexual offenses. *See* ECF No. 42, ¶ 3. Plaintiffs emphasize that SOLSA requires them to undergo sex-offender treatment as part of their sentences, and that they are not eligible for meaningful consideration by the Parole Board unless and until (among other considerations) they are found to have "progress[ed]" in treatment. *Id.*

According to the SAC, Godel's minimum period of incarceration expired in June of 2022, and Lomax's expired in September of 2022. *Id.*, ¶ 4. Both allege that despite being past their parole eligibility dates ("PEDs") and otherwise being appropriate candidates for treatment, they have yet to gain admittance into the SOTMP. *Id.*, ¶¶ 4-5.

Plaintiffs acknowledge that the CDOC has enacted Administrative Regulation ("AR") 700-19, which addresses administration of the SOTMP.[2] *See id.*, ¶ 15; *see also* Ex. A, AR 700-

---

[1] Defendants note that although the issue does not appear to have been addressed by the Tenth Circuit, the overwhelming weight of cases—including from the District of Colorado—hold that where a defendant moves to dismiss some (but not all) of the claims against it, it need not answer the remaining claims until the motion to dismiss has been resolved. *See Bd. of Cty. Comm'rs Cty. of La Plata, Colo. v. Brown Grp. Retail, Inc.*, No. 08-CV-00855-LTB-KMT, 2008 WL 4527736, at *1 (D. Colo. Oct. 3, 2008) (collecting cases from other districts); *see also Talbot v. Sentinel Ins. Co.*, No. 2:11-cv-01766-KJD-CWH, 2012 WL 1068763, at *4 (D. Nev. Mar. 29, 2012) (collecting cases). However, if the Court disagrees with the foregoing authorities, Defendants move in the alternative under Rule 6(b)(1)(A) for an extension of time to submit an answer or other responsive pleading to the claim that is not addressed in this Partial Motion to Dismiss of up to and including fourteen days after the date on which it resolves this Motion.

[2] AR 700-19 has been periodically updated, with the most recent version being effective as of July 1, 2022. In citing to section (IV)(E)(1) of AR 700-19 when discussing the prioritization of offenders, *see* ECF No. 42, ¶

19, effective July 1, 2022.³ The allegations in the SAC reflect that Plaintiffs have been placed on the GRL and that they are currently awaiting treatment. *Id*., ¶¶ 10-11, 37-38. Nonetheless, they maintain that Defendants continue to unconstitutionally "disregard" AR 700-19. *See id*., ¶ 48. As support, Plaintiffs assert that some offenders, unlike Plaintiffs, have been permitted to participate in the SOTMP "up to four-years prior to their PED." *Id*., ¶ 13. They also claim that "many offenders who have taken SOTMP previously are being prioritized in front of Plaintiffs...[who] have not been afforded the opportunity to be admitted to [the] SOTMP." *Id*., ¶ 48.

As explained below, though Plaintiffs' allegations reflect a wait for placement in sex offender treatment that has frustrated their efforts to be paroled thus far, their allegations do not reflect the "outrageous" conduct necessary to "shock the conscious" required to state viable substantive due process claims. Likewise, Plaintiffs' allegations do not show that they have been treated differently than similarly situated inmates, as necessary to state claims for the violation of their equal protection rights. Finally, Plaintiffs have not plausibly alleged that they suffer from a serious mental health need, as is necessary to sustain their Eighth Amendment deliberate indifference claim. Defendants therefore move to dismiss claims two through four.

---

15, it appears that Plaintiffs are relying on an outdated version of the regulation. As of July 1, 2022, the prioritization of offenders for entry into the SOTMP is found at section (IV)(D)(1), while section (IV)(E)(1) addresses the manner in which the SOTMP team determines treatment recommendations and individualized treatment goals.

³ The Court may consider AR 700-19 because it is referred to in the Complaint (ECF No. 42, ¶¶ 15, 48), is central to Plaintiffs' claims, and as a publicly available agency regulation, the court may take judicial notice of it. *See GFF Corp. v. Associated Wholesaler Grocers, Inc.*, 130 F.3d 1318, 1385 (10th Cir. 1997); *Tal v. Hogan*, 453 F.3d at 1265 n. 24; *New Mexico ex. rel. Richardson v. Bureau of Land Mgmt.*, 565 F.3d 683, 702 n. 22 (10th Cir. 2009).

## STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure states that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To avoid dismissal, a complaint must contain factual allegations that – when taken as true – establish a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility requires more than mere conceivability. *See Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012). When resolving a Rule 12(b)(6) dismissal motion, a court should accept as true all well-pleaded factual allegations and construe those allegations in the light most favorable to the plaintiff. *See Sec. & Exch. Comm'n v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014). However, pure legal conclusions are not afforded such deference, and they will not be sufficient to avoid dismissal. *See Dahn v. Amedei*, 867 F.3d 1178, 1185 (10th Cir. 2017).

## ARGUMENT

**I.   Plaintiffs' SAC does not adequately plead a substantive due process violation.**

"To make out a due process claim, [a claimant] must assert the infringement of a protected liberty interest." *Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989); *accord Fristoe v. Thompson*, 144 F.3d 627, 630 (10th Cir. 1998). A protected express liberty interest can arise from either the constitutional due process clause itself, or from a state or federal law. *See Fristoe*, 144 F.3d at 630 (citing *Thompson*, 490 U.S. at 460). In addition, even if a claimant alleges the infringement of a protected liberty interest, the claimant must also make allegations sufficient to demonstrate that the government's actions in relation to the infringement of that liberty interest "shock the conscious" – indeed, this is the ultimate standard for such claims. *Doe v. Heil*, 533 Fed. App'x 831, 843 (10th Cir. 2013).

Here, Plaintiffs allege that they enjoy a protected liberty interest in being able to participate in SOTMP treatment. For the purposes of this Motion only, Defendants will assume for the sake of argument that Plaintiffs have a protected liberty interest in the opportunity to access sex offender treatment. Nevertheless, Defendants submit that Plaintiffs have not suffered a deprivation that runs afoul of substantive due process because Plaintiffs' allegations do not demonstrate that the CDOC's policies and actions "shock the conscious."

"[A] high level of outrageousness is required" to establish a substantive due process violation. *Id*. (citing *Klen v. City of Loveland,* 661 F.3d 498, 513 (10th Cir. 2011)). To assist in the determination of whether a challenged government action is conscience shocking, the Court looks to the following three factors: "(1) the need for restraint in defining the scope of substantive due process claims; (2) the concern that § 1983 not replace state tort law; and (3) the need for deference to local policymaking bodies in making decisions impacting public safety." *Id*. (citing *Ruiz v. McDonnell,* 299 F.3d 1173, 1184 (10th Cir. 2002)).

Ordinary negligence does not shock the conscious; instead, a plaintiff "must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Id*. (citing *Uhlrig v. Harder,* 64 F.3d 567, 574 (10th Cir. 1995)). This is even more the case in the prison setting, and the courts should give "considerable deference" to prison officials in establishing policies for the operation of their prisons in the furtherance of legitimate objections, such as public safety, inmate rehabilitation, and the management of their resources. *See id*. (citing *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003); *Thornburg v. Abbott*, 490 U.S. 401, 407 (1989); *Hughes v. Rowe*, 449 U.S. 5, 20 (1980)). In the corrections context, "[p]risoners are entitled to substantive due process; but substantive-due-process rights available to free

6

persons may be denied to prisoners if the denial bears a rational relation to legitimate penological interests." *Reedy v. Werholtz*, 660 F.3d 1270, 1275 (10th Cir. 2011).

Absent exigent, pressurized circumstances, the substantive due process analysis turns on deliberate indifference, rather than a more culpable mental state like an intent to harm." *Heil*, 533 Fed. App'x at 844 (citing *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 853 (1998)). However, deliberate indifference in the substantive due process context is a stringent standard. *See Radecki v. Barela*, 146 F.3d 1227, 1231 (10th Cir.1998). "[N]ot every instance of deliberate indifference may fairly be condemned as conscience shocking." *Heil*, 533 Fed. App'x at 845 (quoting *Smith v. Dist. of Columbia*, 413 F.3d 86, 107 n. * (D.C. Cir. 2005)).

To survive dismissal of a substantive due process claim, a plaintiff must have pleaded sufficient facts for a court could draw a plausible inference that a defendant acted with conscience-shocking deliberate indifference. *Id.* Notably, in the prison context, a showing that an administrator imposed "reasonable, generally applicable conditions on the admission of inmates into a therapeutic program" which the inmate was unwilling to satisfy is highly unlikely to demonstrate the lack of care necessary to allege conscience-shocking deliberate indifference. *Id.*

In contrast to the plaintiff in *Heil*, Plaintiffs in this case assert that they are willing to meet all requirements for participation in treatment, but Defendants are "knowingly and willfully implementing and enforcing a policy and practice of arbitrarily depriving offenders of statutorily mandated treatment[,] despite actual knowledge that such deprivation" would render them ineligible for release onto discretionary parole. ECF No. 42, ¶ 47. More specifically, Plaintiffs allege that they are on a waitlist for treatment, that they have limited information as to when they

7

may expect to be admitted, and that the CDOC unfairly gave priority on the waitlist to inmates who had already had a chance at treatment, which has delayed their entry into treatment.

However, as discussed above, Plaintiffs implicitly acknowledge that the CDOC promulgated an administrative regulation (AR 700-19) to govern how inmates should be prioritized for participation in the SOTMP, a program which has "limited resources and space." *See id.*, ¶¶ 13, 15. They also acknowledge that there are now "less staff members available" as compared with 2018. *Id.*, ¶ 44. As the Tenth Circuit has observed, "[it] would be disinclined to conclude that, where a prison policy is reasonably related to a legitimate penological interest, something about the prison administrator's promulgation and enforcement of that policy could result in a shock to the judicial conscience." *Heil*, 533 Fed. App'x at 846.

There can be little dispute that the CDOC policy to establish a SOTMP priority list and methodology is reasonably related to a legitimate penological interest – *i.e.*, providing that treatment in light of a finite set of resources to do so. As a general matter, prison officials are given deference to their exercise of discretion over the allocation of limited prison resources. *See e.g., Hammons v. Saffle,* 348 F.3d 1250, 1257 (10th Cir. 2002) (noting that courts must be particularly deferential to discretion of corrections officials over the allocation of limited prison resources, such as resources to provide religious accommodations). Defendants submit that Plaintiffs' allegations that there is a waiting list for spots in sex offender treatment due to limited resources, and that the CDOC has developed a four-factor system for prioritization on the waiting list, do not demonstrate "outrageous," conscious-shocking behavior.

Furthermore, Plaintiffs' allegations indicate that they *have* been given some information regarding the length of time they may anticipate that they will be on the waiting list, and that

8

they are moving toward the top. Plaintiffs' allegations as they relate to Lomax establish that (1) he reached his PED in September of 2022, (2) the CDOC has classified him as recommended, ready, and willing to commence treatment, and (3) in April of 2023, he was told by Defendant Folz, "You're looking at, at least [two to three] years before enrolling in treatment…," whereas 11 months earlier, Defendant Folz's estimation was that Lomax was looking at a three-to-four year wait. ECF No. 42, ¶¶ 4, 10-11. While Lomax may subjectively assert that he fears indefinite incarceration, the allegations in the SAC demonstrate that he has been given a place on the GRL and is progressing towards the top – albeit not as expeditiously as he would like – and that Defendants have communicated with him about his progress, even if they could not provide him with his specific place on the waitlist or a date-certain by which he will be admitted into treatment. *See id*. Similarly, the allegations also demonstrate that Godel has been afforded a place on the GRL and was incrementally advancing upwards. *See id*., ¶ 38. And while Plaintiffs assert that they are no longer being informed of their exact place on the GRL, the allegations demonstrate that both Plaintiffs have been afforded in-person meetings with Defendants Bailey and Folz where they have been able to voice their concerns about the SOTMP admittance practices, and Lomax has been able to ascertain his approximate wait time on the GRL as a result of personal meetings with Defendant Folz. *See id*., ¶¶ 10-11, 14. Understanding that Plaintiffs desire immediate entry into the SOTMP, as well as perhaps a clearer picture of where they stand on the GRL, the CDOC's alleged conduct, through Defendants, does not rise to the degree of outrageousness required for a substantive due process claim.

Furthermore, Plaintiff's allegations that Defendants knowingly enforce a policy or engage in a practice of "arbitrarily" depriving offenders of sex offender treatment, *Id*., ¶47, that

9

Defendants "have little understanding of how the GRL actually works," *Id*., ¶ 43, and that Defendants "disregard" AR 700-19, *Id*., ¶ 48, are unsupported and even contradicted by the allegations in the SAC as well as AR 700-19 itself. For example, Plaintiffs claim that AR 700-19 states that "prisoners who have not taken the SOTMP will be given priority over the prisoners who have." *Id*., ¶ 15. First, AR 700-19 states no such thing. *See* Ex. A. Second, AR 700-19 plainly establishes a nonexclusive and unranked list of factors that SOTMP uses to prioritize offenders for treatment participation that includes the risk of sexual recidivism and institutional behavior as well as distance from PED and prior treatment opportunities.[4] And finally, Plaintiffs do not allege any well-pleaded facts to support the notion that the priority list established by AR 700-19 is not a permissible waiting list. They have made no allegations regarding how AR 700-19's nonexclusive factors are (or should be) weighted, or why the CDOC is committing an error of constitutional magnitude by considering certain factors, but not others. Nor have Plaintiffs alleged how the factors identified in AR 700-19 have been misapplied to them, specifically.

In further support of their assertion that CDOC has implemented a policy of "arbitrarily" depriving offenders of treatment (presumably referencing the CDOC's administration of the GRL), Plaintiffs also claim that other offenders have been permitted to begin treatment prior to their PEDs, or to re-enroll in treatment, whereas they continue to be post-PED and still awaiting entry into the SOTMP. *See* ECF No. 42, ¶¶ 13, 48. But the SAC is clear that some offenders

---

[4] Specifically, pursuant to AR 700-19(IV)(D)(1)(a) – (d), effective July 1, 2022, sex offender inmates within four years of their parole eligibility date are prioritized for treatment based upon, but not limited to, (a) parole eligibility date, (b) risk for sexual recidivism, (c) prior SOTMP treatment opportunities, and (d) institutional behavior. *See* Ex. A. Past iterations of AR 700-19 have included this identical information regarding SOTMP participation prioritization at section (IV)(E)(1)(a) – (d). *See Tillery v. Raemisch*, 2018 WL 4777411 at *3 (D. Colo. Oct. 3, 2018).

10

were able to participate in the SOTMP "*up to* four-years prior to their PED." *Id.*, ¶ 13 (emphasis added). Participation in treatment when an offender is within four years of their PED is plainly permissible under AR 700-19. Ex. A, p. 4. And while Plaintiffs further allege that "many offenders" are being permitted to re-enroll in the SOTMP, *Id.*, ¶ 48, they offer no further argument or analysis as to why this evinces a conscious-shocking mismanagement of the GRL where hundreds of other offenders, like Plaintiffs, also require progression within the SOTMP to become eligible for parole.[5] The fact that CDOC's weighing of various priorities might not have personally benefitted Plaintiffs *at this time* does not mean that it has made prioritization decisions "arbitrarily" or in a manner that is contrary to legitimate penological interests.

As such, Plaintiffs' allegations about the CDOC's administration of the SOTMP and the GRL are "too conclusory to permit a proper legal analysis and cannot support a plausible constitutional challenge." *See Ramirez v. Holder*, 590 Fed. App'x 780, 788 (10th Cir. 2014). With respect to the SOTMP, the Tenth Circuit has held that a complaint is impermissibly conclusory where it fails to allege facts to show that – as alleged in the operative complaint in the case – the program is not administered in a manner "reasonably related to a legitimate penological interest." *Heil*, 533 Fed. App'x at 846.

That Plaintiffs have yet to reach the top of the GRL despite being beyond their PEDs is not *prima facie* proof of the GRL being implemented inconsistently with AR 700-19, nor does it suggest a constitutional violation. Their substantive due process claim should be dismissed.

---

[5] Plaintiffs also implicitly acknowledge that multiple treatment tracks exist within the SOTMP. *See* ECF No. 42, ¶¶ 21, 36, 40-41. However, the SAC is completely silent as to which treatment track Plaintiffs believe they require. Furthermore, the SAC contains no allegations as to the treatment track other offenders are being admitted, purportedly ahead of Plaintiffs.

**II.     Plaintiffs fail to state a plausible equal protection claim.**

In their equal protection claim, Plaintiffs reason that because they are "similarly situated" to other offenders who are being granted entry into the SOTMP while they remain awaiting treatment, a constitutional violation has occurred. *Id.*, ¶ 52. However, the SAC does not sufficiently plead facts which meet the threshold showing required to state such a claim.

The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Equal protection "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Different types of equal protection claims require different standards of review. Thus, "[a] claim that a state actor discriminated on the basis of a suspect (e.g., race), quasi-suspect (e.g., gender), or a non-suspect classification calls for strict, intermediate, or rational basis scrutiny, respectively." *Brown v. Montoya*, 662 F.3d 1152, 1172 (10th Cir. 2011).

Plaintiffs' SAC appears to allege that they have been treated differently from other inmates who also must receive and progress in sex offender treatment in order to be eligible for parole consideration; they allege that whereas some offenders been admitted into the SOTMP in advance of their PEDs, Plaintiffs have not. ECF No. 42, ¶ 50. The further allege that some offenders who have previously participated in the SOTMP have been allowed to re-enroll ahead of other offenders, like Plaintiffs, who have yet to gain initial admittance. *Id.*, ¶ 48. Because these allegations do not allege intentional discrimination due to membership in a suspect class, this claim is subject to rational basis scrutiny.

To state such a claim, the inmate "must establish that others, 'similarly situated in every material respect' were treated differently." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011) (quoting *Jicarilla Apache Nation v. Rio Arriba County*, 440 F.3d 1202, 1210 (10th Cir. 2006)). The inmate must then demonstrate that this alleged difference in treatment "was without rational basis, that is, the government action was 'irrational and abusive' and 'wholly unrelated to any legitimate state activity.'" *Id*. (quoting *Mimics, Inc. v. Village of Angel Fire*, 394 F.3d 836, 849 (10th Cir. 2005)).

Courts routinely dismiss equal protection claims where, as here, a plaintiff makes only conclusory allegations without alleging facts that plausibly establish the similarly situated requirement. *See, e.g., Requena*, 893 F.3d at 1210 (holding inmates were not similarly situated where plaintiff's request to use defendant's phone to call his ill father was denied but other inmate was allowed to use the prison phone to call his pregnant wife); *Brown v. Montoya*, 662 F.3d 1152, 1173 (10th Cir. 2011) (holding conclusory allegations that plaintiff "was treated differently from others who had been 'convicted of crimes involving no sexual act, motive, or purpose'" failed to state claim where he did not allege facts about similarly situated inmates).

In this case, Plaintiffs do not plausibly plead sufficient allegations which meet the threshold showing required to maintain an equal protection claim. Here, Plaintiffs allege that they are not being admitted into the SOTMP despite being beyond their PEDs, while some inmates who have yet to reach their PEDs have been granted admittance into the program, along with other offenders who were previously let in. Plaintiffs merely assume that both groups of inmates are similarly situated because all require sex offense treatment as a prerequisite to parole consideration. But the SAC also indicates that the CDOC has established multiple treatment

13

tracks for the various offenders who require SOTMP participation, and that the "track system" considers an offender's risk level when determining the specific treatment than an offender will receive. *See* ECF No. 42, ¶¶ 21, 36. Plaintiffs have made no allegations regarding which treatment track they require, or whether this is the same treatment track that is indicated for the inmates whose admission into the SOTMP they claim violates their equal protection rights.

Furthermore, with regard to the inmates who were allegedly given SOTMP admission prior to their PEDs and/or previously allowed entry, the SAC is silent as to the three other known factors that influence SOTMP prioritization: risk for sexual recidivism, prior SOTMP treatment opportunities, and institutional behavior. As such, Plaintiffs have failed to allege sufficient facts to establish that they were similarly situated *in all relevant aspects* to the group of inmates who began receiving sex offender treatment prior to their PEDs.

Plaintiffs also fail to show how the admission of certain offenders into the SOTMP who have yet to surpass their PEDs was without a rational basis. AR 700-19 certainly does not contain anything like a wholesale prohibition on offenders accessing the SOTMP prior to their PEDs, and Plaintiffs fail to allege any facts from which this Court could conclude that Defendants irrationally and abusively misapplied the provisions of AR 700-19 in a way that was "wholly unrelated to any legitimate state activity." *See Mimics*, 394 F.3d at 849. Accordingly, Plaintiffs' equal protection claim should be dismissed.

**III.     Plaintiffs have not plausibly alleged that they suffer from a serious mental illness, which is necessary to sustain a claim of deliberate indifference.**

In their fourth claim, Plaintiffs assert that by virtue of being persons who have been convicted of sex offenses, they are "mentally ill" persons. ECF No. 42, ¶ 33. As such, Plaintiffs reason that their inability to access sex offender treatment via the CDOC's SOTMP constitutes

14

deliberate indifference to their serious mental health needs and is therefore violative of the Eighth Amendment's prohibition on cruel and unusual punishment. *See id*., ¶¶ 53-56.

Plaintiffs' assertion that they are mentally ill is born of a flawed reading of SOLSA. Indeed, another judge in the District of Colorado has previously considered Plaintiffs' argument that SOLSA automatically identifies all sex offenders as being mentally ill, and flatly rejected it. *See Conkleton v. Zavaras*, No. 08-cv-02612-WYD-MEH, 2010 WL 936069 at *6 (D. Colo. Mar. 15, 2010) ("…I have found nothing in SOLSA which supports a finding that all sex offenders are mentally ill and require treatment for same.").

Moreover, the Tenth Circuit has held that "[t]he mere fact that the plaintiffs are convicted sexual offenders does not mean that they have psychological disorders or that they are in need of psychiatric treatment." *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996). Like the plaintiffs in *Riddle*, Plaintiffs here make no claims of a diagnosis by a physician of a medical need mandating treatment, nor do they describe experiencing any symptoms of their alleged mental illness which a layperson would easily recognize as necessitating a doctor's attention. *Riddle*, 83 F.3d at 1204. Because deliberate indifference amounts to an Eighth Amendment violation only if such needs are "serious," *see Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976), Plaintiffs have failed to state a violation of the Constitution's prohibition against cruel and unusual punishment based on deliberate indifference to a serious medical need. This claim must be dismissed accordingly.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the second, third and fourth claims of Plaintiff's Second Amended Complaint.

Respectfully submitted October 13th, 2023.

PHILIP J. WEISER
Attorney General


*/s/ Kelley M. Dziedzic*
KELLEY M. DZIEDZIC
Assistant Attorney General
Colorado Department of Law 1300
Broadway, 10th Floor
Denver, Colorado 80203
Telephone: 720-508-6582
E-Mail: Kelley.Dziedzic@coag.gov
Attorney for Defendants

16

### CERTIFICATE OF SERVICE

I certify that I have served the foregoing **DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6)** upon all parties by **E-FILING** with the court via CM-ECF system on October 13, 2023, and by depositing copies of same in the United States mail, first-class postage prepaid, at Denver, Colorado, on October 16, 2023, addressed as follows:

David Godel #168450
Fremont Correctional Facility (FCF)
P.O. Box 999
Canon City, CO 81215

William Lomax #168552
Fremont Correctional Facility (FCF)
P.O. Box 999
Canon City, CO 81215
*Plaintiffs Pro Se*

*Courtesy copy e-mailed to client representatives:*
Adrienne Sanchez, CDOC
Tony DeCesaro, CDOC

s/ Jennifer Kaercher & Mariah Cruz-Nanio